UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 15-10009-CR-JEM

UNITED STATES OF AMERICA,

    Plaintiff,

vs.

HARLEM SUAREZ

    Defendant.
_____/

### DEFENDANT'S SENTENCING MEMORANDUM AND REQUEST FOR A DOWNWARD VARIANCE FROM THE SENTENCING GUIDELINE RANGE AND REQUEST FOR RECOMMENDATION TO BOP REGARDING PLACEMENT

Defendant, HARLEM SUAREZ, through undersigned counsel, hereby files this Sentencing Memorandum and Request for a Downward Variance from the Sentencing Guideline Range and Request for a Recommendation to the Bureau of Prisons regarding Placement for Service of Sentence and as grounds therefor states unto the Court as follows:

Defendant stands convicted of one count of Attempt to Possess a Weapon of Mass Destruction and one count of Attempt to Provide Material Support to a Foreign Terrorist Organization; to wit, the Islamic State or IS. Based upon the operation of the Federal Sentencing Guidelines, Defendant scores 43 total offense points at a Criminal History Category VI. The resulting advisory sentencing guideline range is life. Defendant submits in this filing that a variance below that range is reasonable.

As the Court is aware, district courts are free from the mandatory application of the Federal Sentencing Guidelines. As a result, "the court shall impose a sentence sufficient, but not greater than necessary," to comply with the purposes of 18 USC § 3553(a). *United States v. Booker,* 543

U.S. 220 (2005); *Spears v. United States*, 129 S. Ct. 840 (2009); *see also United States v. Ranum*, 353 F. Supp. 2d 984 (E.D. Wis. 2005)(holding that "*Booker* was not an invitation to do business as usual."). The Supreme Court's decisions post-*Booker* emphasize that district courts have wide discretion to fashion an appropriate sentence and that courts of appeals will not disturb those sentences absent an abuse of discretion. *Gall v. United States,* 522 U.S. 38 (2007) (finding a variance to probation for a drug offender reasonable); *Kimbrough v. United States*, 522 U.S. 85 (2007) (holding that the Sentencing Guidelines are merely advisory in every respect; judges are free to disagree with them and sentence individuals reasonably). Courts are free to depart from the Guidelines based solely upon disagreement with the Guidelines so long as the court states its disagreement along with sufficient justification for the extent of the departure. *See United States v. Parris*, 573 F. Supp. 2nd 744, 754-755 (E.D. N.Y. 2008) (citing *United States v. Cutler*, 520 F. 3d 136 (2nd Cir. 2008).

Pursuant to the "parsimony clause" of § 3553(a), a court is to "impose a sentence ***sufficient, but not greater than*** necessary to comply with the specific purposes set forth in § 3553(a)(2)." 18 U.S.C. § 3533(a) (emphasis added). The district court is free to make its own reasonable application of the § 3533(a) and to reject (after due consideration) the advice of the Guidelines. *United States v. R.V.*, 2016 U.S. Dist. LEXIS 7717, *103 (E.D.N.Y. 2016). Further, "in view of the excessive incarceration rates in the recent past and their unnecessary, deleterious effects on individuals sentenced, society and our economy, ***justifiable frugality in incarceration is prized***." *Id*. (emphasis added).

As *Booke*r made clear, the Court must still consider all of the factors set forth in 18 USC § 3553(a) in fashioning Defendant's sentence.

The statutory sentencing factors the Court must consider include the following:

> The nature and circumstances of the offense and the history and characteristics of the Defendant;
>
> The need for the sentence imposed to reflect the seriousness of the offense; to promote respect for the law, and to provide punishment for the offense;
>
> to afford adequate deterrence to criminal conduct;
>
> to protect the public from further crimes;
>
> to provide the Defendant with educational, vocational training or medical care in the most effective manner; and
>
> the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct.

18 U.S.C. § 3553(a) (2).

As set forth above, the ultimate command of § 3553(a) is to impose a sentence that is "sufficient, but not greater than necessary, to comply with the purposes set forth in" subsection (a). *Id*. This parsimony provision requires district courts to impose the minimum punishment needed to satisfy the purposes of sentencing – just punishment, deterrence, protection of the public and rehabilitation of the defendant. Section 3553(a) requires the district court to consider the applicable guideline range, but it is but one of the several factors. And it is the parsimony provision that serves as "the guidepost for sentencing decisions post-*Booker*." *United States v. Ferguson*, 456 F.3d 660, 667 (6th Cir. 2006).

**Nature and Circumstances of the Offense**

As to the nature and circumstances of the offense, it would be folly to suggest that the Court will not weigh this factor heavily against the Defendant. Notwithstanding the reasons for mitigation as outlined below, Defendant professed membership in, and allegiance to, a foreign

3

terrorist organization, Islamic State, and sought to recruit like-minded individuals for the claimed purpose of carrying out attacks. He expressed a dual desire to obtain and to make a bomb and stated his intention to detonate them in places where the public gathers. After multiple meetings and communications with the government's informants posing as IS sympathizers, Defendant met with an undercover agent and took possession of what he believed to be a bomb and stated he would plant the bomb on the beach in Key West and detonate it at a time when unsuspecting beach-goers were present.

Defendant expects that the Government will fully focus on this factor in its statement of its sentencing position and argue that a sentence of life in prison is appropriate. Defendant, however, asks the Court to consider the totality of the arguments expressed herein and find that a sentence of a term of years, as opposed to life, is reasonable.

In considering the nature and circumstances of the offense, it bears noting that the Government was, to a great degree, in a controlling position as to how far this case would be taken. As the evidence in this case showed, in early April 2015 Defendant was posting Facebook messages expressing allegiance to the Islamic State [IS], seeking to recruit followers to the cause and searching for instructions on how to make a bomb. The evidence showed that Defendant was unsuccessful in recruiting IS sympathizers and in obtaining bomb making instructions until the Government sent its informants to engage Defendant beginning in early May, 2015. By late June of 2015, the Government knew that Defendant had no ties to any IS members. The Government also knew that Defendant was unsuccessful in his naïve and amateur attempts to make an explosive device. It was at that time, in mid to late June 2015, Defendant was disengaging from the informants while physical surveillance did not indicate that he was plotting

any terrorist attacks.[1] While the jury rejected the defense of entrapment at trial, the evidence did show that the government agents repeatedly attempted to re-engage Defendant and press him on moving forward with obtaining the bomb. This is a characteristic of the offense that should not be ignored in determining the appropriate sentence.

Moreover, as of late May 2015, well prior to Defendant's receipt of the Government's inert explosive device on July 27, 2015, the Government did have clear evidence that Defendant had violated 18 U.S.C. 2339B(a)(1), which prohibits the attempt to provide material support to a foreign terrorist organization. This evidence consisted of the Facebook posts of Defendant dating back to April of 2015 as well as his participation in the recording of a IS recruitment video in late May of 2015. 18 U.S.C. 2339B(a)(1) carries a 20 year maximum penalty. However, rather than arrest and charge Defendant for a crime he had already committed, the Government decided to keep at the Defendant to bring about his attempt to possess an explosive device in violation of 18 U.S.C. 2332a(a)(2). This statute carries a maximum penalty of life. Thus, this Court should consider whether the Government's actions in creating a situation where Defendant would be facing life as opposed to 20 years is a basis to vary below the guideline range and impose a sentence of a term of years as opposed to life in prison.

**History and Characteristics of the Defendant**

    **A. Lack of Prior Criminal History**

---

[1] Most notably, on July 4th, the day when "the brothers" called for attacks on the United States, Defendant was acting like your average 20-something, drinking beer and carousing on Duval Street.

The Presentence Report reflects that Defendant is 26 years old and has no prior criminal history.  Defendant submits that a sentence of life, even taking into account the gravity of the offenses, is not reasonable given Defendants age and history.

**B.  Defendant's Psychological Status**

This Court should consider Defendant's psychological status which goes a long way to explaining, as well as mitigating, Defendant's conduct. Defendant was evaluated by Dr. Alejandro Arias, Psy. D., a licensed Clinical Neuropsychologist.  Dr. Arias conducted a neuropsychological evaluation of Defendant on January 8, 2016 as part of a competency determination.  Dr. Arias' Report is attached hereto as Exhibit A.  While Dr. Arias found Defendant competent and of low average intelligence, he made other observations that are relevant to sentencing.  Dr. Arias noted that his clinical interview with Defendant and his conversation with Defendant's mother indicated that Defendant is very naïve and gullible with a tendency to be acquiescent.  Dr. Arias also found Defendant to have a significant attraction and morbid curiosity to death and dying.  Dr. Arias noted that Defendant's mother described Defendant as easily misled by others. Defendant's mother also noted that Defendant does not have a history of aggression and did not believe that he possessed any criminal intent to harm others.

Because of an inability to make an objective assessment at the initial evaluation, Dr. Arias again evaluated Defendant on February 1, 2016.  Dr.  Arias' Addendum related to that interview is attached hereto as Exhibit B.  In that evaluation, Dr. Arias found that Defendant's personality lacks internal cohesion.  Defendant wavers in his unpredictability in his behaviors and has deficits in social and personal attainments with a tendency to fall towards self-deprecating acts.  Defendant will stray from periods of functioning adequately with periods of

6

significant emotional, cognitive, or behavioral dysfunction. Dr. Arias found that Defendant has a deflated sense of self-worth and expectation of failure and humiliation in the future. Further, Defendant is prone to impulsive outbursts and chronic moodiness which serve as reinforcement for his tendency to withdraw socially and retreat into fantasy. Defendant harbors feelings that he is misunderstood, unappreciated and demeaned by others and has developed a tendency to be on guard against the most trivial signs of any negative reactions.

Dr. Arias concludes that Defendant has a long-standing pattern of personal inadequacy and chronic feelings of worthlessness and guilt in the midst of a depressive disorder. He is shy and apprehensive and sensitive to public humiliation and rejection. He has feelings of worthlessness, guilt and self-doubt as well as a preoccupation with personal adequacy and feelings of uselessness.

It is respectfully submitted that Dr. Arias' clinical observations and analysis serve to provide a clearer picture of how and why Defendant became involved in the conduct that is the basis of his criminal convictions. Defendant was obviously looking for something to belong to. That, coupled with a preoccupation with death and morbidity, attracted him to the violent ideology of the Islamic State. In the anonymous world of Facebook, he was able to initiate and indulge in fantasies that appealed to his damaged state of mind. Once the undercover informant reached out to him, portraying himself as a brother-in-arms, Defendant sensed that he finally belonged to something. His gullibility and naïveté led him to continue down a path toward criminality. Finally, Defendant's tendency to acquiesce, as noted by Dr. Arias in his first meeting with Defendant, is amply demonstrated in the manner in which Defendant conducted himself in the presence of the various informants in this case. An unwillingness to say no. A desire to impress and be re-assured. A susceptibility to flattery and praise. These are aspects of

Defendant's personality disorder that caused him to continue to engage and reengage with the Government's informants, even after days and even weeks of not responding to the informants' many phone calls and text messages.

With this information as background, it is respectfully submitted that a sentence to a term of years as opposed to life is appropriate. Defendant obviously suffers from personality disorders that led him to identify with the Islamic State and seek the companionship of like-minded individuals. As one who is gullible and easily led, he was easy prey for the informants who appealed to his ego and his need for validation. Finally, as a person with no history of aggression, it is submitted that Defendant would not have had the "guts" to blow up a bomb in an area where people might have been harmed.

### C. Parental Pressure to Reject a Plea Offer

During the pendency of this case, the Government offered Defendant the ability to plead to Count 2 in exchange for dismissing Count 1. Count 2 carries a maximum penalty of 20 years as opposed to Count 1's maximum penalty of life. Counsel relayed this offer many times to Defendant as well as Defendant's parents. Defendant's parents were against any plea as they refused to believe that their son would have done anything wrong, let alone anything near what he was accused of doing. Defendant's parents did not want to view any of the evidence in the case as, in counsel's opinion, they did not want to have to see anything that would shake their belief in their son's innocence.

Defendant rejected the plea offer because of the pressure of his parents to do so. In one jail call recording of May 26, 2016, which the Government provided to counsel, Defendant is heard telling his mother that she does not understand the court process. His mother tells him that

he only needs to have faith in God.  Defendant tells his mother that he would consider/was considering a plea offer.  His mother forcefully interjected saying he should never say anything like that.  Defendant tries to continue to explain his sentiments but his mother will not let him speak.  He then tells his mother that he believes it impossible to win his case. His mother again forcefully interjects telling him not to think that way and to read his Bible and have faith in God.

This excerpt is indicative of the pressure Defendant's family placed upon him to reject a plea offer that he was otherwise inclined to take.   There is a dysfunctional dynamic that exists in this family.  Although he is in his mid-20's, Defendant's mother treats him like a child.  In her interactions with him, she does not allow him to express his mind or exercise any independence.  On the other hand, Defendant has no other persons to turn to.  Since his incarceration, he has only had contact with his parents and his lawyer, save the occasional visit or telephone call with his half-sister.  Additionally, Defendant, because of his lack of experience in custody and his naiveté, was taken advantage of by the "jailhouse lawyers" in the Federal Detention Center who advised him, among other things, to file a pro se Motion to Dismiss that was meritless.

Counsel verily believes that had Defendant had the advice of parents who understood the federal criminal system and had a full understanding of the facts and law surrounding the case, he would have taken the plea with a 20 year maximum.  Unfortunately, Defendant's parents are uneducated, non-English-speaking immigrants who have no sense of the anti-terror fervor that is reported in the American news media and its effect on the public and who only understand religious faith as the way to confront life's problems.  It is respectfully submitted that this characteristic of the Defendant is a basis for the imposition of a sentence of years as opposed to life.

**Deterrence**

Congress has directed sentencing courts to consider the need for a defendant's sentence to afford adequate deterrence to criminal conduct. 18 U.S.C. 3553(a)(2)(B). This is usually understood to include both specific deterrence as to the individual defendant and general deterrence as to the public at large.

Speaking to the issues of specific and general deterrence, Judge Posner of the United States Court of Appeals for the Seventh Circuit, in *United States v. Presley*, 790 F.3d 699 (7th Cir 2015), wrote about the deterrent prong of §3553(a). Writing for the unanimous panel, Judge Posner said,

> A sentence long enough to keep the Defendant in prison until he enters the age range at which the type of criminal activity in which he has engaged is rare and should achieve the aims of …specific deterrence, while lengthening the sentence is unlikely to increase general deterrence significantly if the persons engaged in the criminal activity for which the Defendant is being sentenced have a high discount rate; for beyond a point reached by not a very long sentence, such persons tend not to react to increases in sentence length by abandoning their criminal careers.

790 F.3d at 702.

As to the deterrent effect of lengthy sentences on others, Judge Posner simply stated, in effect, that criminals do not read about and consider other people's sentences, and, if they do, "the length of a sentence has less effect on such a person than the likelihood that he'll be caught, convicted, and imprisoned." *Id.* at 701 (citing A. Mitchell Polansky and Steven Shavell "On the Dis-Utility and Discounting of Imprisonment and the Theory of Deterrence," 28 J. Legal Studies 1, 4-6 (1999)).

In light of Judge Posner's analysis, a departure from a life sentence will not negatively affect the deterrence aspect of a term of years which this court might impose.

**Avoidance of Disparities of Sentences imposed in other Domestic Terrorism Cases**

18 U.S.C. 3553(a)(6) recognizes the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct. Defendant submits that a sentence of life would be widely disparate from other cases involving allegations of terrorism plotted, attempted or committed on U.S. soil that have been prosecuted in district courts under circumstances that did not involve death.   Defendant offers a number of recent examples below.[2]

In the case of USA v. Kareem, 15-Cr-00707 (D. Ariz.), the defendant was charged with conspiring to conduct a shooting attack in Garland, Texas in retaliation for a cartoon contest depicting the Prophet Mohammed and with providing firearms for that purpose.  See Ex. C . Defendant was sentenced to 360 months imprisonment.  Ex. D.

In USA v. Peace, et al, Case No. 14-cr-00011 (N.D. Ga), the defendants were charged with plotting to obtain pipe bombs for the purpose of attacking government facilities and law enforcement agencies in order to start an "active revolution against the government."  Ex. E .  All three defendants, Peace Williamson and Cannon received 144 months.  Exs. F, G and H.

In USA v. Ahmed, Case No. 15-49 (D. Minn.), the defendants were charged with conspiracy to commit murder outside the United States in connection with their plan to travel to

---

[2] The attachments for each case example do not reflect the defendants' criminal histories, a consideration under 3553(a)(6) indicated by the phrase "defendants with similar records." However, as Defendant herein has 0 criminal history points, it would not be possible that any of these other defendants had less of a criminal record.

Syria and to join and fight with the Islamic State. Ex. I. Defendant Omar received a sentence of 420 months and defendants Daud and Mohammed Farah received sentences of 360 months. Exs. J, K and L.

In USA v. Elfgeeh, Case No. 14-cr-06147 (W.D. NY), the defendant was charged with attempt to kill U.S. service members in the name of the Islamic State and was sentenced to 270 months. Exs. M. and N.

In USA v. Cornell, 15-CR-00012 (S.D. Ohio), the defendant was charged with plotting to attack the U.S. Capitol building in the name of the Islamic State. Ex. O. He was sentenced to a total of 160 months imprisonment. Ex. P

In USA v. Litteral, 15-cr-221 (W.D. NC), defendant was alleged to have involvement in the acquisition of firearms and components for explosive devices to attack military and law enforcement personnel. Ex. Q. He received a sentence of 22 months imprisonment. Ex. R.

In light of the foregoing, Defendant submits that a sentence to a term of years as opposed to life is reasonable to avoid unwarranted disparities among defendants who have been found guilty of similar conduct. The cases cited above are similar to the present case as they involve defendants who plotted to commit attacks which were not successful. As 18 U.S.C. 3553(a)(6) recognizes the need to avoid sentencing disparities, a downward variance from life in prison in this case is warranted.

**The need for the sentence imposed to reflect the seriousness of the offense; to promote respect for the law, and to provide punishment for the offense**

As to this factor, Defendant would only state that a term of life is greater than necessary to achieve these sentencing goals. A review of the other similar cases cited above provide

examples of sentences that were not life sentences that were found to meet the overall goals of sentencing.

**Request for Recommendation to BOP for Designation of Service of Sentence**

Defendant seeks this Court's recommendation to the Bureau of Prisons that he serve his sentence in an institution as close to South Florida as possible to facilitate visitation with family.

Respectfully submitted,

ENTIN & DELLA FERA, P.A.
The Litigation Building, Suite 500
633 South Andrews Avenue
Fort Lauderdale, Florida 33301
Telephone:  (954) 761-7201
Facsimile:      (954) 764-2443
Email: richard@entinlaw.com

By:   *s/ Richard F. Della Fera*
       RICHARD F. DELLA FERA
        Fla. Bar No. 66710

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on April 1, 2017, I electronically filed the foregoing document with the Clerk of Court using CM/ECF System, which will send a notification of such filing to all counsel of record.

By: *s/ Richard F. Della Fera*
RICHARD F. DELLA FERA